PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1174
_____

DANTE BURTON,
                    Appellant

v.

WILLIAM SCHAMP, RHU Lieutenant; OSMILT JUAREZ,
Sergeant; SHON GILL, Corr. Officer, RHU; D. JOHNSON,
Corr. Officer, RHU; ALBAN, Corr. Officer, RHU; ROBERT
GILMORE, Superintendent; KERI MOORE, Acting
Grievance Officer

_____

No. 19-2494
_____

MUSTAFA WILLIAMS,
                    Appellant

v.

JOHN WETZEL, Secretary of the Department of Corrections;
BARRY SMITH, Superintendent, SCI Houtzdale;
J. PEARSON, SCI Houtzdale Medical Director;

JOHN/JANE DOE, Department of Corrections Director of
Health Care Services; JOHN/JANE DOE, Kitchen Supervisor
at SCI Houtzdale

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action Nos. 2-17-cv-00895 & 3-17-cv-00192)
Magistrate Judge: Honorable Keith A. Pesto

_____

Argued on April 30, 2021

Before: PHIPPS, NYGAARD and ROTH, <u>Circuit Judges</u>
(Opinion filed: February 10, 2022)

Katherine U. Davis
Tiffany Engsell
Joseph K. Hetrick
Ellen L. Ratigan
Will W. Sachse
Dechert LLP
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

Sarah Best                    (**ARGUED**)
Zi C. Wang                    (**ARGUED**)
University of Pennsylvania Carey Law School
3400 Chestnut Street
Philadelphia, PA 19104

*Counsel for Appellants*

Raymond W. Dorian        (**ARGUED**)
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050

*Counsel for Appellee*


Michael J. Scainci        (**ARGUED**)
Office of Attorney General of Pennsylvania
Strawberry Square
15th Floor
Harrisburg, PA 17120

*Counsel for Amicus Appellee*

---

O P I N I O N

---

**ROTH**, Circuit Judge:[1]

In this consolidated appeal, Dante Burton appeals the Magistrate Judge's order dismissing his complaint with prejudice at the screening stage, before any of the defendants were served or provided consent to magistrate judge

---

[1] The Court extends its gratitude to Appellants' pro bono counsel for their efforts during this appellate proceeding.

3

jurisdiction.  In the companion case, Mustafa Williams appeals both the Magistrate Judge's dismissal of his claims against two defendants at the screening stage before they were served or provided consent to magistrate judge jurisdiction and the Magistrate Judge's grant of summary judgment to the third defendant after she was served but before she consented to magistrate judge jurisdiction.  For the reasons that follow, we will vacate the orders of dismissal and remand these cases to the District Court.

## I.    BACKGROUND

### A.  The Burton Appeal

On July 5, 2017, Burton filed a civil rights complaint in the federal district court for the Western District of Pennsylvania against seven employees of the Pennsylvania Department of Corrections and he moved to proceed *in forma pauperis* (IFP).  He alleged that the defendants retaliated against him after he filed an October 2016 grievance, concerning his use of the law library.  Burton consented to jurisdiction by a U.S. Magistrate Judge when he filed his complaint and IFP motion.  The case was assigned to a Magistrate Judge.

Five days later, the Magistrate Judge *sua sponte* entered an order dismissing Burton's complaint for failure to state a claim.  The order, which otherwise did not mention Burton's IFP motion, then denied the motion to proceed IFP because it did not comply with the Prison Litigation Reform Act (PLRA).  On August 2, 2017, Burton appealed.  We vacated the Magistrate Judge's order and remanded because the order denied Burton's motion to proceed IFP without analyzing

4

whether he qualified for IFP status.[2]

Upon remand, the Magistrate Judge again *sua sponte* dismissed Burton's complaint, incorporating his reasoning from the vacated order.[3] Burton appealed. He contends that the Magistrate Judge lacked authority to dismiss his complaint under 28 U.S.C. § 636(c)(1) because the unserved defendants[4] never consented to magistrate judge jurisdiction.[5]

## B. The Williams Appeal

Burton's case is consolidated with that of Mustafa Williams, who filed an action on October 18, 2017, in the federal district court for the Western District of Pennsylvania against Secretary Wetzel and Superintendent Smith and several employees at SCI-Forest and SCI-Houtzdale after staff members refused to accommodate his special dietary needs.[6] Williams alleged claims for deliberate indifference to serious

---

[2] *Burton v. Schamp*, 707 Fed. Appx. 754, 755 (3d Cir. 2017).

[3] The Magistrate Judge also found that no further action was needed on Burton's IFP petition because the Magistrate Judge had already entered an order granting Burton leave to proceed IFP.

[4] Burton did not default on serving the defendants under Federal Rule of Civil Procedure 4(m).

[5] Burton also argues that the Magistrate Judge erred by failing to consider retaliatory acts by the defendants. Because we find that the Magistrate Judge did not have the jurisdiction to dismiss the complaint, we do not reach the merits of his dismissal order.

[6] Consistent with Fed. R. App. P. 43(c), the Court substitutes Secretary Wetzel with Acting Secretary George Little.

medical needs in violation of the Eighth Amendment of the United States Constitution. He consented to have a magistrate judge conduct all proceedings. The case was assigned to the same Magistrate Judge who presided over Burton's case.

Before any of the defendants were served, the Magistrate Judge *sua sponte* on November 13, 2017, dismissed Wetzel and Smith, with leave to amend. Williams amended his complaint, providing additional facts about Wetzel and Smith's roles, and moved to proceed IFP. On December 1, 2017, the Magistrate Judge granted Williams' IFP motion and ordered that the amended complaint be served only on defendant Janet Pearson, the Corrections Health Care Administrator at SCI-Houtzdale, to whom Williams unsuccessfully submitted several grievances about his need for a medical diet. The Magistrate Judge found that Williams failed to state a deliberate indifference claim against Wetzel and Smith and that he alleged only that Wetzel and Smith learned of Williams' health concerns through inmate grievances.

On January 11, 2018, counsel for Wetzel, Smith, and Pearson waived service and moved to dismiss the amended complaint on behalf of all three defendants.[7] Before the Magistrate Judge ruled on the motion, Williams filed a second

---

[7] Although the Magistrate Judge's order had dismissed Wetzel and Smith without prejudice before they waived service, his decision to deny their motion to dismiss as moot suggests that he was treating their prior dismissal as with prejudice. Accordingly, we will treat the Magistrate Judge's order dismissing Wetzel and Smith before they waived service as a dismissal with prejudice.

amended complaint, which all three defendants again moved to dismiss. On September 26, 2018, the Magistrate Judge dismissed Wetzel and Smith's motion as moot because they had already been dismissed from the case. The Magistrate Judge denied Pearson's motion to dismiss on the merits. On October 16, 2018, the Magistrate Judge ordered defendants Smith and Wetzel terminated from the case. Pearson filed a motion for summary judgment on February 26, 2019. Williams did not respond because he was confined in a restricted housing unit and unable to prosecute his case.[8] The Magistrate Judge granted Pearson's motion on April 22, 2019, and ordered the case closed.

Pearson consented to magistrate judge jurisdiction almost five months after the Magistrate Judge entered judgment in her favor. None of the defendants ever consented to magistrate judge jurisdiction before a final order was entered. On appeal, Williams (like Burton) contends that the Magistrate Judge lacked authority to conduct proceedings because none of the defendants properly consented to magistrate judge jurisdiction as required by 28 U.S.C. § 636(c).[9]

---

[8] Williams asked a fellow inmate, Kareem Carter, to write the Magistrate Judge and inform him of the situation. The Magistrate Judge's Order acknowledges receipt of such a letter.

[9] Our jurisdiction is contingent upon the Magistrate Judge's lawful exercise of his jurisdiction. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 180 (3d Cir. 2012). We review *de novo* the issue of whether the Magistrate Judge had authority to enter final orders in these matters. *Id*.

## II.    DISCUSSION

Defendants raise the following issues:  First, the Burton defendants challenge Burton's standing to object to the Magistrate Judge's authority because he waived his right to object by filing a consent form.  The Williams defendants contend that Williams waived his right on appeal to contest jurisdiction because he consented to magistrate judge jurisdiction and did not raise the issue of jurisdiction in the District Court.  Second, the Burton defendants urge us to interpret Section 636(c)(1) to require the consent only of parties who have been served.  Finally, the Williams defendants maintain that their consent can be implied from their actions, and, alternatively, that their post-judgment consent should apply retroactively.[10]  We address each issue in turn.

### A. Waiver

The Burton defendants contend that Burton has no standing to raise the issue of consent to magistrate judge jurisdiction because he has consented to that jurisdiction, thereby waiving his right to proceed before an Article III judge. We disagree.

At the outset of this case, the district court had jurisdiction over it and referred it to a magistrate judge. However, the magistrate judge could acquire jurisdiction to decide the case only by the consent of the parties.[11]  As we

---

[10] We note that the record indicates that only defendant Pearson filed a post-judgment consent form.

[11] *See* 28 U.S.C. § 636(c)(1).

discuss below, "consent of the parties" does not mean consent just of the prisoner-plaintiff. Moreover, that jurisdictional requirement cannot be waived by the parties.[12] If the requirements of Section 636(c)(1) are not satisfied, the "magistrate judge [is deprived] of jurisdiction over the case" and we are statutorily deprived of appellate jurisdiction over the magistrate judge's orders.[13]

The reason for this outcome is due to the difference between a district court judge, an Article III judge, and a magistrate judge, an Article I judge. Under Article III of the Constitution, the judicial power of the United States is vested in the Supreme Court and in such inferior courts as Congress may establish.[14] These "inferior courts" include the United States District Courts. Article III judges hold their offices for life, and their compensation may not be diminished throughout their tenure.[15] These attributes of Article III judges are essential to the judiciary's independence, which imparts the qualities of authority and respect to a judgment. However, to "relieve courts of unnecessary work and to improve access to the courts,"[16] Congress expanded the office of the magistrate judge, an Article I judge, by enacting the Federal Magistrates

---

[12] *Wharton-Thomas v. United States*, 721 F.2d 922, 926 (3d Cir. 1983)

[13] *Dewey*, 681 F.3d at 180 (citation omitted).

[14] U.S. Const. Art. III, § 1.

[15] *Id*.

[16] *Cont'l Cas. Co. v. Dominick D'Andrea, Inc*., 150 F.3d 245, 250 (3d Cir. 1998) (quoting *Niehaus v. Kan. Bar Ass'n*, 793 F.2d 1159, 1165 (10th Cir. 1986) superseded by statute on other grounds as stated by *DeVargas v. Mason & Hanger-Silas Mason Co*., 911 F.2d 1377, 1383–84 (10th Cir. 1990)).

Act, 28 U.S.C. Chapter 43. Section 636 of the Act empowers district court judges to refer certain matters to magistrate judges.[17] But to ensure that "the essential attributes of the judicial power" remain in Article III, the Act limited the circumstances under which matters may be finally resolved by magistrate judges, who fall outside the confines of Article III because they lack permanency in office and undiminished compensation.[18] "A critical limitation" on the expanded jurisdiction of magistrate judges is the Act's requirement that the parties consent to proceed before a magistrate judge.[19] In other words, the choice of one or more of the parties to forego a decision by an Article III judge and to have the case heard by an Article I judge must be knowing and voluntary.

To ensure that this choice is properly made, Section 636(c)(1) of the Federal Magistrates Act provides:

> (c) Notwithstanding any provision of law to the contrary—
>
> (1) *Upon the consent of the parties*, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any

---

[17] *See* 28 U.S.C. § 636.

[18] *Equal Employment Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 98 (3d Cir. 2017); *see also N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 77 (1982) (quoting *Crowell v. Benson*, 285 U.S. 22, 51 (1932)).

[19] *Gomez v. United States*, 490 U.S. 858, 870 (1989). *See also Wharton-Thomas*, 721 F.2d at 929–30.

or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. [20]

Thus, the absence of consent from the parties to proceed before a magistrate judge, as set out in Section 636(c)(1), implicates the limits that Congress set on a magistrate judge's subject matter jurisdiction.[21] Without the parties' consent, the magistrate judge, as an Article I judge, simply does not have jurisdiction to decide the matter.[22] In Burton's case, because the magistrate judge didn't have jurisdiction to decide the case, he could not dismiss it.

As for the Williams defendants, they contend that Williams waived his right to challenge the Magistrate Judge's authority to dismiss his complaint by failing to raise it before the District Court. However, as we have just pointed out, subject matter jurisdiction cannot be waived; nor can it be forfeited by the failure to object to lack of it.[23] Because the Magistrate Judge never acquired jurisdiction of Williams' case, Williams did not forfeit his right to challenge the Magistrate Judge's jurisdiction under Section 636(c)(1) by

---

[20] 28 U.S.C. § 636(c)(1) (emphasis added).

[21] *See id*.

[22] *Id.*; *Wharton-Thomas*, 721 F.2d at 929–30.

[23] *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Ins. Corp. v. Compagnie des Bauxites*, 456 U.S. 694, 702 (1982) ("[A] party does not waive [subject matter jurisdiction] by failing to challenge jurisdiction early in the proceedings.").

11

having failed to raise it earlier.[24]  Lack of jurisdiction can be raised at any time.[25]

## B.  The Meaning of "Parties" under Section 636(c)(1)[26]

The Burton defendants contend that, in prisoner litigation, only the consent of the prisoner is required for a magistrate judge to gain jurisdiction to screen the complaint. They reason that the Act was designed to increase judicial efficiency and alleviate the burdens on Article III judges by providing an additional tier of judicial officers who can help Article III judges carry out certain duties.  Further, they assert that screenings were developed under the PLRA to increase judicial efficiency and curb abusive tort, civil rights, and conditions of confinement litigation through several reforms, including allowing a magistrate judge to screen and dismiss frivolous complaints.

Because screening often occurs before service of process, defendants conclude that the consent of the prisoner alone will satisfy the requirements of Section 636(c)(1) in the prison litigation context.  Alternatively, they propose that we interpret the term "parties" to require consent only from parties who have been served.  According to defendants, any other interpretation runs counter to the purpose of the Act and of the PLRA because it would preclude magistrate judges from screening complaints without consent from both parties, thus

---

[24] *See Gonzalez*, 565 U.S. at 141.

[25] *Id.*

[26] We discuss the term "parties" solely in relation to its meaning in Section 636(c)(1), and do not take an opinion on the meaning of "parties" in other contexts.

reducing efficiency. We decline to adopt these proposed interpretations.

As always, statutory interpretation begins with an examination of the statute's plain language.[27] The text provides that magistrate judge jurisdiction is conferred "upon consent of the *parties*."[28] The plain language of the statute requires that the consent of multiple parties, as opposed to a single party, be acquired before a magistrate judge can conduct any or all proceedings.

The defendants rely on the legislative history of a separate statute, the PLRA, to support their position that the consent only of the plaintiff is needed in the prison litigation context. However, statutory interpretation that furthers the policy or the legislative history of one statute should not control the interpretation of a different statute's text, particularly where it runs counter to the plain, unambiguous meaning of that text.[29]

Section 636(c)(1) clearly states that the "parties" must consent.[30] Congress's use of the term's plural form in this Section indicates that Congress intended to permit a jurisdictional transfer to a magistrate judge only when more than one party consented. If Congress had intended to make

---

[27] *Disabled in Action of Pa. v. Se. Pa. Transp. Auth*., 539 F.3d 199, 210 (3d Cir. 2008) (citation omitted).
[28] 28 U.S.C. § 636(c)(1).
[29] *See S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 259 (3d Cir. 2013) ("Legislative history has never been permitted to override the plain meaning of a statute.").
[30] 28 U.S.C § 636(c)(1).

the consent of only one party sufficient to confer magistrate judge jurisdiction, it would have used the singular "party" in Section 636(c)(1). Defendants' interpretation that "parties" refers only to a plaintiff in the prison litigation context cannot stand in the face of the Act's unambiguous text.

The second proposed interpretation, that "parties" includes only those parties, who have been served with the complaint, also lacks support in the statutory text and precedent. The term "party" or "parties" is a legal term of art,[31] "and it is a cardinal rule of statutory construction that, when Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken."[32] The Supreme Court has defined the term: "In general, "[a] 'party' to litigation is '[o]ne by or against whom a lawsuit is brought' or one who 'become[s] a party by intervention, substitution, or third-party practice.'"[33] This definition does not distinguish parties who are named, but not served, from parties who have been named and served.

At least two of our sister courts of appeals have reached this conclusion. In *Williams v. King*,[34] the Ninth Circuit Court of Appeals found that a plaintiff's consent alone did not vest the magistrate judge with jurisdiction over a civil rights

---

[31] *Williams v. King*, 875 F.3d 500, 503 (9th Cir. 2017) (citation omitted).

[32] *F.A.A. v. Cooper*, 566 U.S. 284, 292, (2012) (internal quotation marks and citation omitted).

[33] *See Smith v. Bayer Corp*., 564 U.S. 299, 313 (2011) (internal citations omitted).

[34] 875 F.3d 500, 504 (9th Cir. 2017).

complaint and concluded that the absence of consent from unserved defendants deprived the magistrate judge of jurisdiction to dismiss the complaint as to them under the PLRA.[35]

In *Coleman v. Labor and Industry Review Commission*,[36] the Seventh Circuit Court of Appeals addressed a similar question: "whether a defendant who has not yet been served is one of the 'parties' who must consent for purposes of section 636(c)(1)."[37] *Coleman* involved a *pro se* litigant who filed a complaint along with an IFP motion that, before the defendants had been served, was screened and dismissed by a magistrate judge for failure to state a claim. Coleman appealed, and the court of appeals considered whether the magistrate had exceeded his authority under Section 636(c)(1) when he dismissed the complaint for failure to state a claim before obtaining the consent of "the parties (plural) to act."[38] The court held that at least one party from each side of the "v." must consent to a magistrate judge's jurisdiction before a magistrate judge may dismiss a complaint for failure to state a claim at the screening stage.[39] It reasoned that the text of the statute requires the consent of both parties because it uses the term's plural form, noting that this interpretation follows the general use of the term "parties" throughout the Federal Rules of Civil Procedure.[40] The court also noted that there is "no ambiguity in the meaning of the term 'parties' [in Section

---

[35] *Id*. at 505.

[36] 860 F.3d 461 (7th Cir. 2017).

[37] *Id*. at 468.

[38] *Id*. at 465 (internal quotation marks omitted).

[39] *Id*. at 470.

[40] *Id*. at 471.

636(c)]: It refers to the names on both sides of the 'v,' without regard to events such as service of process."[41]

We agree with the interpretation of our sister courts. "The fact that it is the plaintiff who commences the suit does not mean that the other parties named in the complaint do not count as 'parties' prior to service of process."[42] Accordingly, in order to confer Article III judicial authority upon a magistrate judge, we read Section 636(c)(1)'s reference to the *consent* by the "parties" to require the *consent* by any party directly affected by an order or a judgment issued by that magistrate judge.[43]

## C. Whether Consent Can Be Implied from the Conduct of

## Defendants

The Williams defendants argue that their consent to the Magistrate Judge's jurisdiction can be implied from their actions during the litigation. Although the Magistrate Judge had already *sua sponte* dismissed defendants Wetzel and

---

[41] *Id.* at 473.

[42] *Id.* at 471. Such a rule may not be as rigorous as it appears. The magistrate judge can easily obtain consent from any party entering an appearance. If that is not possible, the district judge always has jurisdiction to dismiss a party or to otherwise rule as necessary.

[43] No consent from a defendant is necessary where a plaintiff has failed to effect service on the defendant in the time prescribed by Fed. R. Civ. P. 4(m). Thus, consent from a defendant is unnecessary where a plaintiff chooses not to serve the defendant or is unable to serve the defendant.

Smith, counsel for all three defendants appeared and moved to dismiss Williams' complaint on behalf of all defendants. Relying on the Supreme Court's decision in *Roell v. Withrow*,[44] the Williams defendants contend that we can infer their voluntary consent from this conduct since they knew they were being sued.[45] We do not agree. In *Roell*, the Supreme Court decided whether "consent can be inferred from a party's conduct during litigation."[46] There, the district court referred the case to the magistrate judge; the clerk of court then sent the referral to the defendants "along with a summons directing them to include [a written statement indicating whether] [a]ll defendants consent[ed] to the jurisdiction of a [magistrate judge]."[47] Only one defendant gave written consent to the referral, while the remaining defendants "filed answers but said nothing about the referral."[48]

After the case proceeded to judgment before the magistrate judge, the plaintiff appealed; the court of appeals remanded the case to the district court to determine whether the

---

[44] 538 U.S. 580, 586 (2003).

[45] Under Section 636(c)(1), we are permitted to imply consent if the magistrate judge is a full-time magistrate judge or a part-time magistrate judge who serves as a full-time judicial officer. If the magistrate judge is simply a part-time magistrate judge, Section 636(c)(1) requires a specific written request that the part-time magistrate judge exercise jurisdiction in a case. The Magistrate Judge here is a part-time magistrate judge who serves as a full-time judicial officer. The consent to his jurisdiction could therefore be implied.

[46] *Roell*, 538 U.S. at 582.

[47] *Id*. at 583.

[48] *Id*.

parties had consented to proceed before the magistrate judge.[49] Only after remand did the remaining defendants file a letter of consent with the district court.[50] The district court concluded that, although the defendants participated voluntarily in the entire proceedings before the magistrate judge,[51] court of appeals precedent indicated that consent could not be implied by the parties' conduct.[52] Accordingly, the district court held that the failure of the remaining defendants to provide "express consent before sending their postjudgment letter to the District Court meant that" the magistrate judge lacked jurisdiction.[53] The court of appeals agreed and held that the lack of consent and errors in the letter of referral to the magistrate judge are jurisdictional errors that cannot be waived.[54]

The Supreme Court reversed on the issue of lack of consent pursuant to Section 636(c)(1). The Court observed that where the referral is made to a magistrate judge, the statute suggests that a defect in the referral "does not eliminate that magistrate judge's 'civil jurisdiction' under [Section] 636(c)(1) as long as the parties have in fact voluntarily consented."[55] The Court concluded that Congress intended to permit implied consent under certain circumstances but refused to adopt a bright-line rule as to when implied consent should

---

[49] *Id*.

[50] *Id*. at 583–84.

[51] The record showed that these defendants "voiced no objection when, at several points, the Magistrate Judge made it clear that she believed they had consented." *Id*. at 584.

[52] *Id*.

[53] *Id*.

[54] *Id*. at 585.

[55] *Id*. at 587 (internal citations omitted).

be accepted.[56]  Instead, the Court held that "the better rule is to accept implied consent where, as here, the litigant or counsel *was made aware of the need for consent and the right to refuse it*, and still voluntarily appeared to try the case before the Magistrate Judge."[57]

Applying these principles to Williams' appeal, we conclude that the consent of defendants Wetzel, Smith, and Pearson cannot be implied from their conduct.  Section 636(c)(2) requires that the Clerk of Court notify the parties of their right to refuse to proceed before a magistrate judge, but there is no indication in the record that the defendants ever received such a notice.  As Williams notes, the record here shows only that the defendants were aware of being sued.  The Williams defendants do not point to anything in the record showing that they were made aware of the need to consent and their right to refuse to do so.  Under these circumstances, *Roell* bars us from inferring, from the defendants' conduct, their consent to proceed before a magistrate judge.[58]

---

[56] *Id*. at 589–90 ("On the one hand, the virtue of strict insistence on the express consent requirement embodied in § 636(c)(2) is simply the value of any bright line:  here, absolutely minimal risk of compromising the right to an Article III judge.  But there is another risk, and insisting on a bright line would raise it:  the risk of a full and complicated trial wasted at the option of an undeserving and possibly opportunistic litigant.").

[57] *Id*. at 590 (emphasis added).

[58] *See Phillips v. Beierwaltes*, 466 F.3d 1217, 1221 (10th Cir. 2006) ("Because there was no notification to the Beierwaltes or their counsel of the need to consent or the right to refuse consent, *Roell* does not permit us to infer consent to the magistrate judge's authority to act for the district court.").

19

**D. Whether Pearson's Post-Judgment Consent Applies**

**Retroactively**

The final question is whether defendant Pearson's post-judgment consent should apply retroactively.[59]  The Williams defendants urge us to hold that post-judgment consent should apply retroactively to a magistrate judge's entry of a final order.  They contend that the voluntariness of the parties' consent to proceed before a magistrate judge is not in dispute and that Section 636(c) does not require a specific time for consent.  Thus, as long as the voluntariness of consent is not at issue, it does not matter when a consent form was filed.

Defendants rely on several decisions from our sister courts of appeals.  These cases are inapposite.  Some do not support the defendants' proposition;[60] others do not sufficiently analyze the issue.[61]  Accepting post-judgment

---

[59] We note that defendants Wetzel and Smith did not file an express post-judgment consent form.

[60] For example, the Ninth Circuit Court of Appeals in *Kofoed v. International Broth. of Elec. Workers, Local 48*, 237 F.3d 1001, 1004 (9th Cir. 2001), accepted the parties' written consent forms that were filed after the magistrate entered judgment and the case was on appeal. However, that conclusion hinged on the fact that "the record reflects that the parties gave express oral consent to the magistrate judge's jurisdiction *while* they were before the magistrate judge *and before* he made a dispositive ruling." *Id*.

[61] The Seventh Circuit Court of Appeals' decision in *King v. Ionization Intern., Inc.*, 825 F.2d 1180, 1185 (7th Cir. 1987),

consent, where there has been no prior consent (express or implied), is not permitted by the statutory text and raises constitutional problems under Article III for Section 636(c)(1) referrals.

In *Roell*, the majority found that Congress intended to accept implied consent from the parties' conduct *during* the litigation but declined to address "whether express postjudgment consent would be sufficient in a case where there was no prior consent, either express or implied."[62]   This is precisely the issue presented here.

The importance of the timing of consent is implicit in

_____

accepted the parties' post-judgment consent to the magistrate judge's jurisdiction but did not fully analyze whether such consent was proper beyond stating that the "statute does not require a specific form or time of consent." *Id; see also Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir. 1998) (same).  Similarly inapposite is the defendants' reliance on a footnote in the Eleventh Circuit Court of Appeals' decision in *Rembert v. Apfel*, 213 F.3d 1331, 1335, n.1 (11th Cir. 2000) ("Parties can consent even after judgment.") (citing *General Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1496–97 (11th Cir. 1997)).  First, *Rembert* is no longer good law in light of *Roell*.  *Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007).  Second, *Rembert's* note relied on the Eleventh Circuit Court of Appeals' decision in *General Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1496–97 (11th Cir. 1997), which relied on the Seventh Circuit Court of Appeals' decision in *King*.
[62] *Roell*, 538 U.S. at 591, n.8.

the fact that a non-Article III judicial officer does not have decision-making authority *until* the parties consent. Notwithstanding the valuable contributions that magistrate judges provide to the efficiency of the federal judiciary, allowing a magistrate judge to "assume the role of a district judge," as permitted by Section 636(c)(1),[63] *before* obtaining the consent of the named parties (whether express or implied) creates constitutional problems for Section 636(c)(1): it would permit a non-Article III officer to *independently* exercise Article III powers (by entering a final order that is not reviewable by the district court) *before* he is given the authority to do so.

By its very terms, post-judgment consent suggests that a non-Article III officer exercises a core Article III power *before* he has obtained the authority to do so. This puts the cart before the horse. Such consent cannot change the fact that, at the time a judgment was entered, Article III powers were exercised by a non-Article III officer who did not have the authority to do so. This concern is not present in cases of implied consent as consent is inferred from the parties' conduct *during* the proceedings; there, a magistrate judge is robed with Article III authority through implied consent that is inferred from the parties' conduct *before* he exercises a core Article III power by entering a final order that is not reviewable by district courts. That is not the case with post-judgment consent.

Moreover, with post-judgment consent, we do not know if any or all of the parties were aware during the proceeding of the need of knowing and voluntary consent. Neither do we

---

[63] *Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc.*, 53 F.3d 851, 852 (7th Cir. 1995).

want to create a situation where a losing party, after the conclusion of a trial, can claim lack of consent in order to nullify the proceeding.

Although implied consent does not run afoul of Article III, post-judgment consent may. It is well settled that federal courts should avoid a statutory interpretation that creates constitutional issues.[64] Thus, we feel compelled to reject defendants' position that post-judgment consent applies retroactively under Section 636(c)(1). Accordingly, we hold that defendants' post-judgment consent could not satisfy the requirements of Section 636(c)(1).

## III.    CONCLUSION

For the above-mentioned reasons, we conclude that the Magistrate Judge had no authority to dismiss Williams' and Burton's complaints without obtaining the consent to magistrate judge jurisdiction not only of the prisoner-plaintiffs but of the defendants being dismissed from the case or granted summary judgment. As to implied consent, absent notice to the parties of the need for consent and their ability to withhold it, consent cannot be implied from the parties' conduct here. Where the consent requirement of Section 636(c)(1) is not met, the appropriate procedure under Section 636(b)(1)(C) is for the Magistrate Judge to issue a report and recommendation to the District Court, which is vested with the authority to dismiss the

---

[64] *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005) ("When deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail.").

23

parties and enter final judgment in the matter. Accordingly, we will vacate the orders dismissing Burton's complaint and granting dismissals and summary judgment in Williams' case and remand the cases to the District Court for further proceedings consistent with this opinion.